EBLINE *v.* CAMPBELL
[No. 152, October Term, 1955.]

*Decided April 10, 1956.*

*Motion for rehearing filed May 8, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Alfred F. Walker,* with whom was *Lawrence B. Scally* on the brief, for appellant.

*John D. Gilmore, Jr.,* with whom were *Conroy, Williams & Nylen* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree ordering the specific performance of an alleged contract for the sale of real estate.

The appellant, George J. Ebline, was the owner of a tract of land containing approximately 168 acres in Prince George's County, Maryland. In the summer of 1954 he received several letters from Mr. Robert E. Lohr, a real estate broker, soliciting employment as a broker to sell this tract. On November 15, 1954, the appellant engaged the services of Harry O. Levin, Esquire, to

represent him. On November 24, 1954, he signed a letter, directed to Mr. Levin, authorizing him as his exclusive agent to sell the 168 acres for the sum of $30,000.00 net to him and upon payment of said sum or security thereof he agreed to execute a deed to Mr. Levin or his designee.

As a result of a telephone call from Mr. Levin, on November 25, 1954, appellant met Mr. Lohr, a Mr. Goodwin, one of Mr. Lohr's employees, and the appellee, Mr. James W. Campbell, on the property for the purpose of showing them its boundaries. The property was inspected at that time and certain rights of ways were discussed and were pointed out by Mr. Ebline. When Mr. Ebline was asked about the price or terms for which he would consider selling the property, he informed Mr. Lohr that he would have to take the matter up with Mr. Levin.

On the next day, November 26th, Mr. Lohr negotiated a contract for the sale of the land at the price of $238.60 per acre. The deposit was $1,000.00. The contract also provided: "The Purchaser agrees to pay Twenty Thousand and no/100 Dollars ($20,000.00) cash at the date of conveyance, of which sum this deposit shall be a part." The balance of the purchase price was to be secured by a deed of trust. Possession and occupancy were to be given at the time of settlement, which was to be within ninety days or when the survey was ready. This contract was signed: "James W. Campbell, (Purchaser), Harry O. Levin, (Seller), Attorney for Geo. Ebline."

On February 28, 1955, the appellant terminated his relationship with Mr. Levin as attorney, and employed a Mr. Scally as his attorney. On the same day the appellant went with Mr. Scally to the office of Mr. Lohr where another contract was prepared. The deposit was $1,-000.00. The sale price was to be $238.60 per acre and the purchaser agreed "to pay twenty-two thousand Dollars ($22,000.00) cash at the date of conveyance, of which sum this deposit shall be a part." The balance of the purchase price was to be secured by a deed of trust. Settlement was to be within thirty days or when the survey was completed. The appellant signed an original

and four copies. He retained one copy and left the other four to be executed by the appellee. Mr. Lohr testified that he immediately contacted Mr. Campbell, who indicated his acceptance of the new agreement.

On March 4, 1955, Mr. Lohr received a letter from Mr. Scally informing him that Mr. Ebline would require the signature of Mr. Campbell to the agreement and its return to his attorney, Mr. Scally. Mr. Lohr then contacted Mr. Campbell, who indicated that he had theretofore accepted the modification, but was reluctant to sign the agreement because he did not want to become involved in any controversy between Mr. Ebline and Mr. Levin. Mr. Lohr, having ascertained that the survey would be available on March 7, 1955, on March 4th arranged a time for settlement with the title company and notified Mr. Ebline that the modified agreement had been accepted by the appellee and that settlement had been arranged for Monday, March 7th.

On that day Mr. Ebline, Mr. Campbell, Mr. Lohr, and Mr. Scally met in the office of Mr. Nylen at the title company and went over the settlement statements showing the amounts to be paid, the amounts due each party, and the instruments to be executed by each party. After a discussion of these items, it was discovered for the first time from an inspection of the survey that appellant's land was divided into two tracts, which adjoined only at a point and that there was no right of way by which one could go from one parcel to the other. Mr. Lohr testified that Mr. Scally offered to get a right of way from Mr. Irwin, who owned the land between the two tracts. Mr. Nylen testified that Mr. Campbell said he would like to have a right of way and that he would be willing to buy one or two acres if he could obtain it from Mr. Irwin, and Mr. Scally stated that he was acquainted with Mr. Irwin and thought that he could get the right of way. Mr. Ebline testified that he went to the meeting to make the settlement. He had no contract signed by Mr. Campbell, and Mr. Campbell refused the contract without a right of way, and that he never saw the February 28th

contract signed by him. Mr. Campbell testified that he signed the February 28th contract on February 26th. Mr. Scally said that Mr. Lohr told him on March 4th that he was unable to get Mr. Campbell to sign. Mr. Lohr testified that Mr. Campbell signed the contract on March 7th at the title company office. Mr. Nylen said he did not see Mr. Campbell sign. He had the contract signed by both Mr. Campbell and Mr. Ebline on the day of settlement. Mr. Scally testified that Mr. Campbell said that if a right of way of fifty feet could be procured he would still buy the property but that Mr. Ebline would have to supply the right of way, and that if he did not get a right of way he would not buy the property. Mr. Scally then called Mr. Irwin on the telephone but he was not at home.

Mr. Scally and Mr. Ebline went to see Mr. Irwin, who said that he did not own the property but that his father owned it, and his father was in Florida but he would take it up with him. Mr. Irwin called Mr. Scally the next day and told him he had talked to his father. His father said he could see no reason why he would be willing to sell, to give a right of way, as far as he was concerned. If Mr. Ebline could not sell the property, he would be interested in buying it. Mr. Scally testified that he then called Mr. Lohr and told him that they were unable to procure the right of way. He also told Mr. Lohr that Mr. Irwin might be interested in buying appellant's property. Mr. Lohr replied that he would talk it over with Mr. Campbell and see whether or not he still wanted it. The next morning he called Mr. Lohr and told him that, if Mr. Campbell wanted the property, for him to submit an offer in writing, that Mr. Campbell would have to take it as it was because there was no right of way available. If Mr. Campbell wanted to make an offer he should submit it to Mr. Ebline for his consideration.

On March 11, 1955, Mr. Scally received four copies of a contract signed by Mr. Campbell wherein he offered to purchase the property from Mr. Ebline for $40,000.00, which was approximately $700.00 less than the contract of February 28th. This contract submitted by Mr. Camp-

bell contained the provision "Contract to be ratified on or before Monday, March 14, 1955." Mr. Campbell called Mr. Scally on the 13th and told him that the time was approaching and he was wondering why he had not gotten back his contract. Mr. Scally then told Mr. Campbell that they had an opportunity to negotiate for a sale with Mr. Irwin, that they would not accept the offer of $40,-000.00. He then returned the contract to Mr. Campbell. Mr. Ebline and Mr. Scally then negotiated with Mr. Irwin and entered into an agreement with him on March 16th whereby Mr. Irwin agreed to purchase the property for $46,000.00. Settlement was arranged, and just prior to the settlement the bill of complaint was filed in this case asking specific performance of the alleged amended contract of February 28, 1955. After a hearing in open court the chancellor was of opinion that the contract of November 26, 1954, "was contrary to the decided cases of Maryland," but nevertheless Mr. Ebline and his attorney set in motion the events which resulted in the contract of February 28, 1955, which was signed by Mr. Ebline and that that contract had not been rescinded. He therefore decreed specific performance of the contract of February 28, 1955. From that decree appellant appeals here.

It is said in 1 *Restatement of the Law of Contracts*, Section 38: "Rejection of Offer by Counter-Offer. A counter-offer by the offeree, relating to the same matter as the original offer, is a rejection of the original offer, unless the offeror in his offer, or the offeree in his counter-offer states that in spite of the counter-offer the original offer shall not be terminated. Comment: a. A counter-offer amounts in legal effect to a statement by the offeree not only that he is willing to do something different in regard to the matter proposed, but also that he will not agree to the proposal of the offeror. A counter-offer must fulfill the requirements of an original offer. There is none unless there is a manifestation sufficient to create a power of acceptance in the original offeror. This distinguishes a counter-offer from a mere inquiry

regarding the possibility of different terms, a request for a better offer, or a comment upon the terms of the offer. Likewise, an offer dealing with an entirely new matter and not proposed as a substitution for the original offer is not a counter-offer. * * * Illustrations: 1. A offers B to sell him Blackacre for $5000, stating that the offer will remain open for thirty days. B replies, 'I will pay $4800 for Blackacre,' and on A's declining that, B writes, 'I accept your offer to sell for $5000.' There is no contract, although B's acceptance of these terms was made within the time limit originally fixed by A in his offer."

In *Duplex Envelope Co. v. Baltimore Post Co.*, 163 Md. 596, 163 A. 688, the plaintiff signed a written contract with the defendant which had been signed by the defendant in another city. The plaintiff sent the contract back to the defendant enclosed in a letter which in terms modified the contract and involved a rejection of the last preceding offer of the defendant and made a new offer on the part of the plaintiff. It was said by Judge Parke in that case: "The legal effect of the plaintiff's signing of the written contract, which had been previously signed by the defendant, as modified in writing by the letter of August 15th, and sending the two back to the defendant, was a rejection of the next preceding offer of the defendant and a new offer on the part of the plaintiff which was communicated to the defendant by the receipt of the two paper writings."

It is stated in *Williston on Contracts*, Vol. 1, Section 77, p. 222, citing *Duplex Envelope Co. v. Baltimore Post Co., supra*: "Qualified or conditional acceptance are counter-offers and reject the original offer. A conditional acceptance is in effect a statement that the offeree is willing to enter into a bargain differing in some respect from that proposed in the original offer. The conditional acceptance is, therefore, itself a counter-offer and rejects the original offer, so that thereafter even an unqualified acceptance of that offer will not form a contract." It is said in *Brantly on Contracts*, 2d Ed., pg. 45, Section 14(v): "An offer is rejected not only when the refusal

is express but also when the offeree in reply to it proposes different terms. That is an implied rejection and the offeree's proposal is a counter-offer."

A counter-offer by one party relating to the same matter as the original offer, is a rejection of the original offer, unless the offeror in his offer, or the offeree in his counter-offer states that regardless of the counter-offer the original offer shall not be terminated.

There is no evidence here to contradict the statement of Mr. Ebline that he never received a signed copy of the February 28th paper. It is evident that Mr. Campbell was not willing to accept the offer made by Mr. Ebline on February 28th without rights of way from Mr. Irwin. This is borne out by the fact that the counter-offer of March 11th was for approximately $700.00 less. The counter proposed contract and counter-offer by Mr. Campbell on March 11th wherein he offered to buy the same property for $40,000.00, which was approximately $700.00 less than the offer of February 28th, stating that it was to be ratified on or before March 14th, was a rejection by Mr. Campbell of the offer of February 28th. This counter-offer of March 11th by Mr. Campbell gave Mr. Ebline a way out of all former negotiations with Mr. Campbell, of which Mr. Ebline immediately took advantage. There being no enforceable contract between the parties, specific performance should not have been decreed. The decree will be reversed, and the case remanded.

## PER CURIAM

The appellee filed a motion for reargument and modification of this opinion, among other things, seeking a refund of the deposit of one thousand dollars ($1,000.00) made under the proposed contract. As the appellee obtained a decree for specific performance of the contract in the Circuit Court, no such claim was asserted by him there. This decree was reversed here. The question of the refund of one thousand dollars ($1,000) was not

raised in this Court and is presented for the first time by this motion. The appellant in his answer to the motion concedes that the appellee is entitled to the refund, but asserts that the appellee is not entitled to it from him, since the money was paid over by the appellee to the real estate agent. As there was a prayer for general relief in the bill of complaint we will remand the case for the sole purpose of determining in this case whether the appellant should pay to the appellee the said deposit of one thousand dollars ($1,000). In other respects the motion is denied.