974 A.2d 366

**Jeffrey RIOS**

v.

**STATE of Maryland.**

**No. 1223, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

June 12, 2009.

Ronald L. Schwartz, College Park (Maria E. Mena, on the brief), Silver Spring, for Appellant.

Mary Ann Ince (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: DEBORAH S. EYLER, MEREDITH and ZARNOCH, JJ.

MEREDITH, Judge.

Appellant, Jeffrey Rios, was charged in the Circuit Court for Prince George's County with eleven offenses, including reckless endangerment. His counsel, Ronald L. Schwartz, entered into plea negotiations with the Assistant State's Attorney assigned to the case; these negotiations continued for about two weeks. In this interlocutory appeal, Rios contends that Schwartz and the prosecutor reached an agreement under which Rios would enter an *Alford* plea to reckless endangerment and the State would dismiss the remaining charges. But, at the end of the parties' negotiations, the prosecutor contended there was no agreement.

Rios filed a motion to enforce the alleged plea agreement, and the parties stipulated to a statement of facts. The circuit court denied the motion, finding that the parties never

reached an agreement. Rios then noted this appeal, presenting the following questions:

I. Did the court err in finding that there was no plea agreement reached between the State and the Defendant?

II. If there was a plea agreement between the State and the Defendant, was such an agreement subject to specific enforcement?

Pursuant to Maryland Rule 8–603(c), the State included in its appellee's brief a motion to dismiss Rios's interlocutory appeal, citing the final judgment rule.

We deny the State's motion to dismiss, holding that the appeal is allowed under the collateral order doctrine. On the merits of the appeal, we answer both of the appellant's questions in the affirmative, concluding that the motions court was mistaken in ruling that Schwartz rejected the plea agreement by making a counteroffer before attempting to accept the outstanding offer from the State. Accordingly, we conclude that Rios and the State entered into an enforceable plea agreement.

## FACTS AND PROCEDURAL HISTORY

On January 8, 2008, Rios was charged with three counts of first degree assault, three counts of second degree assault, three counts of use of a handgun in the commission of a crime of violence, reckless endangerment (Count X), and one count of unlawfully carrying a handgun. On Rios's behalf, Schwartz entered into plea negotiations with the prosecutor assigned to the case. The parties have stipulated to the facts regarding these negotiations, recited in Rios's motion to enforce the plea agreement as follows:

1. The Defendant, through his counsel, Ronald L. Schwartz, had entered into extensive plea negotiations with the State in the above entitled matter. Prior to the week beginning April 7, 2008, the Assistant State's Attorney assigned to the case, ["the prosecutor"], had offered the Defendant a plea to one count of possession of a handgun

and one count of reckless endangerment, with time served. On or about April 8, 2008, the Defendant, through counsel, rejected the above noted offer, and told [the prosecutor] that he could recommend an Alford plea to reckless endangerment, with time served. The prosecutor agreed to such a plea offer. Counsel informed [the prosecutor] that he would discuss the matter with his client and get back to him. Counsel met with the Defendant who agreed to accept the plea offer.

2. On Friday, April 18, Defendant's counsel left several messages on [the prosecutor's] voice mail, regarding acceptance of the plea offer. A message was again left on Monday, April 21. On Tuesday, April 22, 2008, [the prosecutor] returned the call. Counsel made the following inquiry to [the prosecutor]: "Would you consider allowing a nolo plea to reckless?" [The prosecutor] informed Mr. Schwartz that he could not agree to a nolo plea. He stated that he was getting pressure from the police and his superiors to not make a plea offer. Counsel informed the prosecutor that his client would accept the plea offer made: Alford plea to reckless endangerment, with time served. [The prosecutor] informed counsel that he was meeting with the police and his superiors and did not think he could make any plea offer at the time.

3. Later in the week, [the prosecutor] called and informed Defendant's counsel that no plea offer would be made.

On May 23, 2008, Rios filed a "Motion to Enforce Plea Agreement and to Dismiss All Counts of the Indictment Except for the Tenth Count," arguing that the circuit court should, pursuant to an *Alford* plea, sentence Rios to time served for reckless endangerment and dismiss the remaining counts. On June 13, 2008, the circuit court held a hearing on the motion and reached the following decision:

THE COURT: ...

The court, first off, with regard to whether or not one is guided by detrimental reliance or not in terms of determin-

ing whether or not there was a plea agreement here. The court believes that that factor is not an appropriate or necessary factor under a circumstance where there is no act required other than to plead guilty effectively.

The court accepts the facts as set forth, as stipulated by the parties. Those facts are set forth in a motion to enforce plea agreement and to dismiss all counts of the indictment except for the tenth count.

The court notes that there is a-let me go some place else first. In reference to Willingston [sic] and the restatement of contracts and the *Katz [v. Pratt Street Realty Co.,* 257 Md. 103, 262 A.2d 540 (1970) ] case, as well as *[State v.] Brockman* [, 277 Md. 687, 357 A.2d 376 (1976) ] on the issue of the—the extent to which the—I call the strike application of the laws of contract apply to consideration of plea agreements. The court does not believe that any of those references changes a requirement to consider whether or not there is a counter offer. Whether or not certain words convert a response to an offer-to a counter offer and that the counter offer can be taken as rejection of the offer that is on the table.

There the court believes that it is ultimately called upon to determine whether or not the words ["]would you consider allowing a nolo to reckless["] constitutes a counter offer and might be accepted as a rejection here, relieving the obligation upon the State to accept any subsequent effort at forming a contract. Basically whether or not the State will be relieved of being bound by a subsequent effort to accept, if the statement which ["]will you consider allowing a nolo plea to reckless["] is deemed to be in the nature of a counter offer.

The court first finds that when defendant's counsel made the-what's been characterized as an inquiry to the Assistant State's Attorney, would you consider allowing a nolo plea to reckless. The court does not consider that to be a mere inquiry or a mere effort to modify. Meaning a mere effort to modify the plea offer that had been up for discussion to that point in time.

Why do I say that? The court notes from the assertion of facts that are accepted in the motion, that the State—there had been negotiations up to a point of the defendant asking the State to allow an Alford plea to reckless endangerment to time served. And it's not clear what happened to the count of possession of a handgun, but it was part of the discussion. And [the prosecutor] agreed to such a plea offer. Counsel informed [the prosecutor] that he will discuss the matter with his client and get back to him. So at that point in time, effectively what we have is an offer so-to-speak from the State as the court construes matters.

Counsel met with the defendant who agreed to accept the plea offer, but that acceptance had not been communicated to the court. And the court notes, particularly with the words that were used, that the leaving of several messages on [the prosecutor's] voice mail regarding the acceptance of the plea offer did not include the words to the effect that my client will accept the plea offer. And, indeed, that is corroborated within the court's mind by the conversation, would you consider allowing a nolo plea to reckless.

The court looking at the rules, particularly Rule 4–242. And is satisfied that an Alford plea is different from a plea of nolo contendere. Subsection (D) of that rule specifies that a defendant may plead nolo contendere only with the consent of the court. That is an important distinction.

Further, when the court looks at the annotation, and, in fact, I read all of the materials that counsel had provided to the court. And you can actually look at the notations that I made on it. And I tried to ignore the unlining [sic] the parties did. In the Katz case, however, I was glad to get to the underlining, and then I needed to go back in the Katz case to look at exactly the nature of what was purported to be the modification.

If I look at the annotations, they are fairly consistent in indicating that the entry of a plea of nolo plea is not a conviction. The court considers that to be—and the fact that that is the case, including the requirement of the consent of the court, although that comes later. **The court**

is satisfied that the invitation that there will be an examination of nolo was, indeed, a counter offer. That was a rejection of the offer and the State was no longer bound to a plea agreement on the basis of the offer that existed prior to communication of the request that nolo be considered.

And Katz—in this regard, I think Katz is more relevant than most of the criminal cases. Which citing Williston appropriately by Mr. Schwartz, expresses frequently an offeree while making a positive acceptance of the offer, also makes a request or suggestion that some addition or modification be made. So long as it is clear that the meaning of the acceptance is positively and unequivocally to accept the offer. Whether such a request is granted or not, a contract is formed.

The court, considering the distinctions between a plea of nolo and an Alford plea, finds that the language used by— the words used by Mr. Schwartz were not a positive unequivocal acceptance of the State's offer to allow Mr. Rios to plea—to offer an Alford plea. And the court denies the motion to enforce the plea agreement.

(Emphasis added.) On the same day, the court docketed an order denying the motion.

On July 7, 2008, Rios—who has not entered a plea as to the reckless endangerment count—filed a notice of appeal. On July 8, 2008, the circuit court continued the trial pending resolution of the appeal.

## DISCUSSION

■ There are two steps in the implementation of a plea agreement. *Kisamore v. State*, 286 Md. 654, 657–58, 409 A.2d 719 (1980). First, the State and defendant must reach an agreement. Md. Rule 4–243(a)(*l*) (2008). Second, the parties must then present the agreement to the court, which has the discretion to accept or reject the plea. Md. Rules 4–242(c), (d). If the plea agreement calls for a particular sentence,

disposition, or other judicial action, the court must also approve that portion of the plea agreement. Md. Rule 4–243(c).

In this case, the circuit court denied Rios's motion to enforce on the ground that the parties never reached an enforceable plea agreement. As discussed below, we disagree.

## I. Collateral Order Doctrine

Before considering the merits of this appeal, we must determine whether we have jurisdiction to hear the case. The circuit court has not yet rendered final judgment. *Greco v. State,* 347 Md. 423, 432 n. 4, 701 A.2d 419 (1997). As the Court of Appeals stated in *County Commissioners ex rel. St. Mary's County v. Lacer,* 393 Md. 415, 424–25, 903 A.2d 378 (2006):

> Ordinarily, appellate review is available only after the entry of a final judgment where all claims against all parties are resolved. *Shoemaker v. Smith,* 353 Md. 143, 725 A.2d 549, 560 (1999); *Sigma Repro. Health Cen. v. State,* 297 Md. 660, 664–65, 467 A.2d 483, 485 (1983); *see also* Maryland Rule 2–602(a). The fundamental objective of this principle is "to prevent piecemeal appeals and to prevent the interruptions of ongoing judicial proceedings." *Sigma Repro. Health Cen.,* 297 Md. at 665, 467 A.2d at 485 (Citations omitted). In *Smith v. Lead Industries Association, Inc.,* 386 Md. 12, 21, 871 A.2d 545, 550 (2005), we recently re-emphasized that there are three limited exceptions to the general requirement of awaiting a final judgment before seeking appellate review: (1) appeals from interlocutory rulings specifically allowed by statute, Maryland Code (1974, 2002 Repl. Vol.), Courts & Judicial Proceedings Article, § 12–303; (2) immediate appeals permitted under Maryland Rule 2–602(b); and (3) appeals from interlocutory rulings allowed under the common law collateral order doctrine.

The first two exceptions to the final judgment rule do not apply here; only the collateral order doctrine might justify Rios's interlocutory appeal.

The Court of Appeals explained the collateral order doctrine in *Hudson v. Housing Authority*, 402 Md. 18, 25–26, 935 A.2d 395 (2007):

> The collateral order doctrine permits a reviewing appellate court to treat as final, without consideration of the procedural posture of a case, a "narrow" class of interlocutory orders in "extraordinary circumstances." *Ehrlich v. Grove*, 396 Md. 550, 561–62, 914 A.2d 783, 791 (2007); *In re Foley*, 373 Md. 627, 634, 820 A.2d 587, 591 (2003). We have applied gingerly this doctrine to review actions completely separate from the merits of the litigation based on a "perceived necessity" of immediate appellate review. *Ehrlich*, 396 Md. at 562, 914 A.2d at 791 (quoting *Dawkins v. Baltimore City Police Dep't*, 376 Md. 53, 64, 827 A.2d 115, 121 (2003))....
>
> The collateral order doctrine may apply when a decision of the lower court meets four conjunctive and strictly construed elements. *Ehrlich*, 396 Md. at 563, 914 A.2d at 792. If an interlocutory decision "(1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, and (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment," then the collateral order doctrine applies. *Id.*, 914 A.2d at 791.

Maryland courts have previously held that a court's decision not to enforce a particular term in an established plea agreement or miscellaneous bargain meets all four elements of the collateral order doctrine. *Jackson v. State*, 358 Md. 259, 747 A.2d 1199 (2000); *Courtney v. Harford County*, 98 Md.App. 649, 635 A.2d 8 (1994). Similarly, in *Clark v. Elza*, 286 Md. 208, 406 A.2d 922 (1979), the Court of Appeals allowed an interlocutory appeal from a circuit court's decision denying a motion to enforce a settlement agreement in a civil suit. In accordance with this precedent, we hold that the motions court's decision that Rios and the State did not reach a plea agreement is appealable under the collateral order doctrine.

The State correctly does not contest that the decision meets the first two elements of the doctrine. First, the decision conclusively determined whether the parties entered into a plea agreement, the primary issue on appeal. *See Jackson, supra,* 358 Md. at 267, 747 A.2d 1199 ("denial of the petitioner's motion to dismiss conclusively determines—answers—the question of the enforceability of the agreement between the parties"); *Clark, supra,* 286 Md. at 213, 406 A.2d 922 ("the order finally resolved the disputed question of whether the plaintiffs were bound by their oral settlement agreement"). Second, this issue is important to the case, as a decision favorable to Rios would result in the dismissal of every charge but one, and obviate the need for trial. *See Jackson, supra,* 358 Md. at 267, 747 A.2d 1199 (enforceability considered an important issue where judgment for appellant would result in dismissal of all criminal charges).

The State does contest, however, whether the third and fourth elements of the collateral order doctrine are met. But the third element is satisfied because the existence of an enforceable plea agreement is an issue independent of appellant's guilt or innocence. *See Jackson, supra,* 358 Md. at 270, 747 A.2d 1199; *Courtney, supra,* 98 Md.App. at 658, 635 A.2d 8. And the fourth element is satisfied because the existence of a plea agreement is effectively unreviewable after proceeding to trial and verdict, given that an important purpose of making a plea agreement is to avoid the expense, inconvenience, and uncertainty of a trial. The defendant's rights cannot be fully vindicated if he is compelled to wait for a final judgment. *See Jackson, supra,* 358 Md. at 270–71, 747 A.2d 1199; *Clark, supra,* 286 Md. at 213, 406 A.2d 922; *Courtney, supra,* 98 Md.App. at 658–59, 635 A.2d 8.

The State contends that this case is distinguishable from the aforementioned cases because the issue here is whether a plea agreement was ever reached, not whether a given agreement is enforceable, and because Rios did not take any detrimental action in reliance upon the existence of the purported agreement. But *Clark* refutes the State's argu-

ment. In that case, defendants who sought to enforce an oral settlement agreement in a tort action similarly challenged the circuit court's interlocutory ruling that the parties had failed to reach a binding settlement agreement, even though the defendants had not detrimentally relied upon such an agreement. 286 Md. at 210–11, 213, 406 A.2d 922. Whether a court denies the existence of an agreement between the parties or refuses to enforce a particular term, the losing party is entitled to pursue an interlocutory appeal in order to effectively enforce his contractual rights, and detrimental reliance is not a prerequisite to that right.

We are cognizant that the Court of Appeals, in *Tamara A. v. Montgomery County Department of Health and Human Services*, 407 Md. 180, 963 A.2d 773 (2009), recently reiterated that "the idea that an issue is not effectively reviewable after the termination of trial because it involves a 'right' to avoid the trial itself, should be limited to double jeopardy claims and a very few other extraordinary situations." *Id.* at 191, 963 A.2d 773 (quoting *Shoemaker v. Smith*, 353 Md. 143, 169–70, 725 A.2d 549 (1999)). But the enforcement of a plea agreement is such an "extraordinary situation," which the Court of Appeals in *Jackson* likened to the issue of double jeopardy. *Jackson, supra*, 358 Md. at 271, 747 A.2d 1199. The enforceability of alleged plea agreements is a proper basis for interlocutory appeals because of the strong public policy that favors the plea negotiation process. *See State v. Brockman*, 277 Md. 687, 693, 357 A.2d 376 (1976) ("plea bargains ... aid the administration of justice and, within reason, should be encouraged").

## II. Formation of Plea Agreement

In *State v. Brockman, supra*, the Court of Appeals considered whether the defendant's breach of an established plea agreement was sufficient to relieve the State of its obligations under the agreement. In construing the agreement, the Court set forth the applicable standard for review of plea negotiations:

[T]he standard to be applied to plea negotiations is one of fair play and equity under the facts and circumstances of the case, which, although entailing certain contract concepts, is to be distinguished from . . . the strict application of the common law principles of contracts. The rigid application of contract law to plea negotiations would be incongruous since, for example, the trial court is not ordinarily bound by the compact and, as the State concedes, it cannot obtain "specific performance" of a defendant's promise to plead guilty.

277 Md. at 697, 357 A.2d 376 (citations omitted); *see also Solorzano v. State*, 397 Md. 661, 668, 919 A.2d 652 (2007) ("Contract principles alone, however, are not enough to resolve disputes over the proper interpretation of a plea bargain. Due process concerns for fairness and the adequacy of procedural safeguards guide any interpretation of a court approved plea agreement." (Citations omitted)); *Sifrit v. State*, 383 Md. 77, 93-94, 857 A.2d 65 (2004) ("It is appropriate to consider fair play and equity when reviewing an agreement between the State and a criminal suspect. . . .").

 In this case, the issue before us is not the construction of a plea agreement, but rather whether any contract was formed. Given that Rios has not detrimentally relied upon the existence of the alleged plea agreement and that there is no suggestion of unfair conduct by the State in the course of the plea negotiations, we see no reason to depart from standard principles of contract law in determining whether the parties ever reached an enforceable plea agreement.

 The creation of a contract requires, generally, that one party make an offer and that the offeree accept it. *Cochran v. Norkunas*, 398 Md. 1, 23, 919 A.2d 700 (2007). The Court of Appeals explained the requisites of an offer in another context in *Maryland Supreme Corp. v. Blake Co.*, 279 Md. 531, 539, 369 A.2d 1017 (1977):

An offer must be definite and certain. *Peoples Drug Stores v. Fenton*, 191 Md. 489, 494, 62 A.2d 273 (1948). To be capable of being converted into a contract of sale by an

acceptance, it must be made under circumstances evidencing an express or implied intention that its acceptance shall constitute a binding contract. Accordingly, a mere expression of intention to do an act is not an offer to do it, and a general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer.

Rios argues that, on April 8, 2008, Schwartz (on his behalf) offered to enter an *Alford* plea to reckless endangerment and be sentenced to time served in exchange for the dismissal of the remaining charges, and that the prosecutor accepted this offer. As Rios's agent, Schwartz theoretically *could have* made such an offer, but it is clear from the stipulated facts that he did not do so, for he expressly conditioned this purported settlement upon subsequently obtaining the consent of Rios. An "offer" that requires a third party's approval before it becomes effective is no offer at all. *See Foster & Kleiser v. Balto. County,* 57 Md.App. 531, 536–37, 470 A.2d 1322 (1984) (citing *Dillon v. AFBIC Dev. Corp.,* 420 F.Supp. 572 (S.D.Ala.1976), *aff'd in part and rev'd in part,* 597 F.2d 556 (5th Cir.1979)). Therefore, when the prosecutor expressed his approval of an *Alford* plea agreement on April 8, it was he, not Schwartz, who made an offer of a plea bargain. The question is whether Schwartz, in effect, unintentionally rejected the outstanding offer by exploring alternative terms, as the motions court found.

According to the stipulated statement of facts, on April 18 and April 21, Schwartz left the prosecutor voice messages "regarding acceptance of the plea offer." Nevertheless, the motions court found that in none of these messages did Schwartz actually communicate unconditional acceptance of the prosecutor's offer, and Rios does not challenge that view of the facts.

The motions court further concluded that, on April 22, when Schwartz asked the prosecutor, "[w]ould you consider allowing a nolo plea to reckless [endangerment]?", Schwartz made a counter-offer to the prosecutor, thereby rejecting the

*Alford* plea offer.[1] If the court was correct in concluding that Schwartz's nolo question constituted a counter-offer, then Schwartz's attempt to immediately follow with acceptance of the *Alford* plea offer was ineffective, as he had already rejected and thereby nullified the prosecutor's offer. *See Katz v. Pratt Street Realty Co.*, 257 Md. 103, 118–19, 262 A.2d 540 (1970).

■ But we hold that the legal significance of Schwartz's question is controlled by RESTATEMENT (SECOND) OF CONTRACTS § 39, which provides in Comment b that a "mere inquiry regarding the possibility of different terms" does not constitute a counter-offer or rejection of an offer:

> *b. Qualified acceptance, inquiry or separate offer.* A common type of counter-offer is the qualified or conditional acceptance, which purports to accept the original offer but makes acceptance expressly conditional on assent to additional or different terms [citation omitted]. Such a counter-offer must be distinguished from an unqualified acceptance which is accompanied by a proposal for modification of the agreement or for a separate agreement. *A mere inquiry regarding the possibility of different terms, a request for a better offer, or a comment upon the terms of the offer, is ordinarily not a counter-offer.* Such responses to an offer may be too tentative or indefinite to be offers of any kind; or they may deal with new matters rather than a substitution for the original offer; or their language may manifest an intention to keep the original offer under consideration.

---

1. A *nolo contendre* plea is substantially different from an *Alford* plea. The former is distinct from a guilty plea, as it is not an admission of conduct and does not result in a conviction. *McCall v. State*, 9 Md.App. 191, 193, 263 A.2d 19 (1970); *see* Md. Rule 4-242(a). Accordingly, a *nolo contendre* plea may not be admitted as inculpatory evidence at a separate trial. *Agnew v. State*, 51 Md.App. 614, 652, 446 A.2d 425 (1982). In contrast, "an *Alford* plea [is] a specialized type of guilty plea where the defendant, although pleading guilty, continues to deny his or her guilt, but enters the plea to avoid the threat of greater punishment." *Ward v. State*, 83 Md.App. 474, 478, 575 A.2d 771 (1990).

(Emphasis added.) In the same comment to § 39, Illustration 2 provides the following example which is analogous to the facts of this case:

2. A makes the same offer to B as that stated in Illustration 1 [an offer to sell land for $5000, offer to remain open for 30 days], and B replies, "Won't you take less?" A answers "No." An acceptance thereafter by B within the thirty-day period is effective. B's inquiry was not a counter-offer, and A's original offer stands.

Professor Williston's treatise on contracts similarly observes: "[I]t is not necessarily true that any communication from the offeree other than an unequivocal acceptance is a rejection." 1 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 5:3 (4th ed. 2007).

In *Ebline v. Campbell*, 209 Md. 584, 121 A.2d 828 (1956), the Court of Appeals quoted the first Restatement's definition of a counter-offer as follows:

"A counter-offer amounts in legal effect to a statement by the offeree not only that he is willing to do something different in regard to the matter proposed, but also that he will not agree to the proposal of the offeror. A counter-offer must fulfill the requirements of an original offer. There is none unless there is a manifestation sufficient to create a power of acceptance in the original offeror. *This distinguishes a counter-offer from a mere inquiry regarding the possibility of different terms, a request for a better offer,* or a comment upon the terms of the offer."

209 Md. at 589–90, 121 A.2d 828 (quoting RESTATEMENT OF CONTRACTS § 38 cmt. a) (emphasis added). To similar effect, the Court in *Ebline* observed: " 'An offer is rejected not only when the refusal is express but also when the offeree in reply to it *proposes* different terms. That is an implied rejection and the offeree's proposal is a counter-offer.' " *Id.* at 590–91, 121 A.2d 828 (quoting WILLIAM T. BRANTLY, LAW OF CONTRACT § 14(v) (2d ed.)) (emphasis added).

We conclude from the stipulated statement of facts that, as a matter of law, Schwartz's question to the prosecutor—

"Would you consider allowing a nolo plea to reckless?"—was a mere inquiry regarding the possibility of different plea agreement terms, not a counteroffer. *See* RESTATEMENT (SECOND) OF CONTRACTS § 39 cmt. b, illus. 2 (1981) (defining purchaser's inquiry, "Won't you take less?", not to constitute a counteroffer); *see also Thomas v. Reliance Ins. Co.*, 617 F.2d 122, 128 (5th Cir.1980) (applying Texas law, inquiry as to whether additional indemnitor would sign bond application held not to constitute counter-offer); *King v. Travelers Ins. Co.*, 513 So.2d 1023, 1026 (Ala.1987) (holding "inquiry as to whether the plaintiffs would consider a structured settlement with a different payment arrangement" not a counter-offer); *Beck v. Shrum*, 18 S.W.3d 8, 11 (Mo.Ct.App.2000) (same as to plaintiff's inquiry, "how about 10 thousand, some more money will settle it"); *KVET Broadcasting Co. v. Tiemann*, 447 S.W.2d 457, 460 (Tex.Ct.Civ.App.1969) (same as to inquiries regarding whether purchaser would pay higher, specified purchase price and/or higher, specified interest rate on deferred balance).

Because Schwartz's question about the possibility of a better offer was not a counter offer, he did not reject the prosecutor's offer. Therefore, Schwartz's subsequent communication of his client's acceptance, prior to the time the prosecutor attempted to withdraw the offer, was effective, and the parties formed a plea agreement that was binding upon the State (subject to court approval). *Kisamore, supra*, 286 Md. at 661–62, 409 A.2d 719.

Although *Kisamore* was decided four years before *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437, (1984), *abrogated in part on other grounds, Puckett v. United States*, —— U.S. ——, —— n. 1, 129 S.Ct. 1423, 173 L.Ed.2d 266, 276 n. 1 (2009), the State has raised no issue regarding the continuing vitality of *Kisamore*, and we express no opinion thereon. *See generally* Annotation, *Right of Prosecutor to Withdraw from Plea Bargain Prior to Entry of Plea*, 16 A.L.R.4th 1089 (1982).

**APPELLEE'S MOTION TO DISMISS THIS APPEAL IS DENIED.**

**372**

ORDER OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY DENYING APPELLANT'S MOTION TO ENFORCE PLEA AGREEMENT IS VACATED. CASE REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.