defense. *Cf., e.g., Manuel v. State,* 85 Md.App. 1, 16, 581 A.2d 1287 (1990) (To establish a CDS distribution conspiracy, it is not necessary to "show direct communication between all persons in the chain of . . . supply and retailing of the narcotics. The parties' knowledge of the existence and importance of the other links in the distribution chain may be inferred from the circumstances, and it is sufficient to show the combination and community of interest."); *Bolden v. State,* 44 Md.App. 643, 652, 410 A.2d 1085 (1980) (" '[T]he law rightly gives room for allowing the conviction of those discovered upon showing sufficiently the essential nature of the plan and their connection with it, without requiring evidence of knowledge of all its details or of the participation of others.' ") (quoting *Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 92 L.Ed. 154 (1947)).

**JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

46 A.3d 1223

**Y.Y.**

v.

**STATE of Maryland.**

**No. 3025, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

June 27, 2012.

726

728

George Harper, Upper Marlboro, MD, for Appellant.

James E. Williams (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: DEBORAH S. EYLER, KEHOE, STUART R. BERGER,* JJ.

---

* Judge Berger initially participated in this matter by special assignment and was appointed as an Associate Judge of this Court while this case was pending.

**KEHOE, J.**

The principal issue in this case is whether the remedy of *quantum meruit* is available to a defendant who has not fully performed his obligations under a plea agreement. We hold that it is not.

■ Y.Y.[1] appeals from an order of the Circuit Court for Prince George's County denying his motion to enforce the terms of a plea bargain. He presents three questions which we have reworded and consolidated as follows: [2]

Did the Prince George's County Circuit Court err in denying appellant's motion to enforce the plea agreement?

We will affirm the order of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

In early May, 2009, appellant, while represented by counsel, entered into a plea agreement with the State's Attorney for Prince George's County. In essence, appellant agreed to plead guilty to a pending charge of possession of cocaine with intent to distribute. If appellant cooperated with the Narcotics Enforcement Division of the Prince George's County Police Department as a confidential informant, appellant would be sentenced to 18 months, with all but one day suspended; if

---

**1.** Appellant acted as a confidential informant for the Prince George's County Police Department. He has requested that this Court refer to him by initials only in this opinion, as disclosure of his role as a confidential informant places him at risk of retaliation. We will refer to appellant as "Y.Y.," initials that are not his own.

Appellant has also requested that this Court seal the record in this case. That request is properly directed to the circuit court.· *See State v. WBAL–TV*, 187 Md.App. 135, 157–158, 975 A.2d 909 (2009) (It is within the discretion of a trial court whether or not to seal a criminal record.).

**2.** Appellant presents the following issues:

A. Did the Circuit Court err in denying appellant's motion to enforce his plea agreement?

B. Is the State of Maryland a person protected by the Thirteenth Amendment?

C. Are the police, protected by the Thirteenth Amendment from a court order mandating that the State cooperate with the Defendant in the enterprise of catching criminals?

appellant failed to do so, he would be sentenced within the sentencing guidelines, which were five to ten years. The parties further agreed that sentencing would be deferred until appellant had an opportunity to fulfill his obligations.

Appellant entered a guilty plea, which was accepted by the circuit court. Sentencing was deferred until August, 2009. The transcript of the proceeding contains no reference to the terms of a plea agreement. However, the terms of the agreement were explained to the presiding judge off the record.

On May 12, 2009, appellant and his counsel met with Prince George's County Assistant State's Attorney ("ASA") Tamika S. Brown, Esq., to discuss the details of the plea agreement. At this meeting, Ms. Brown, appellant, and defense counsel signed a letter stating the following:

> This is to advise you that the State's plea offer in this case is conditioned on the agreement stated below:

1. The defendant is to sign up as a confidential informant with N.E.D.: [3]

2. The defendant is to give names and detailed information regarding three sources for cocaine;

3. The defendant's sources must be people who are Kilo dealer's of cocaine;

4. The defendant has to give information, conduct a control buy, or arrange an introduction that leads to the arrest of his supplier. The CDS weight has to be enough for PWID [4] indictment;

5. The defendant has to keep in constant contact with [the] N.E.D.;

6. The defendant must keep his communications that he has with [the] and N.E.D. confidential.

7. The defendant must follow directions of [the] N.E.D.;

---

**3.** "N.E.D." is an acronym for the Narcotics Enforcement Division of the Prince George's County Police Department.

**4.** "PWID" is an acronym for "possession with intent to distribute."

8. As the last resort, the Defendant must testify; and

9. The defendant is to start working as a confidential informant starting the week of this letter.

(Footnotes added by this Court).

Appellant's sentencing proceeding was continued four times between August and October, 2009. A sentencing hearing was held by the court in early November, 2009. During that proceeding, defense counsel alluded to a "dispute [that] has arisen" as to appellant's obligation to perform "certain community services" and requested a continuance for a month for the parties "to fix it all." Ms. Brown consented to the continuance, which was granted. Sentencing was rescheduled to early December. At that hearing, defense counsel requested another continuance because "we [have] an agreement that is still in the process of being fulfilled." Again, Ms. Brown consented to the request. Sentencing was continued by the court on three additional occasions in December, 2009 and January, 2010.

Appellant then filed a motion to enforce his plea agreement, contending that the State had ceased performing its obligations under the agreement, therefore making it impossible for appellant to satisfy his. The circuit court conducted a two-day hearing on appellant's motion. The circuit court heard testimony from both appellant and ASA Brown regarding the plea agreement and appellant's progress, or lack therefore, in fulfilling the agreement. We summarize the evidence:

During his interaction with the Narcotics Enforcement Division, appellant was, at various times, assigned to work with different Prince George's County detectives. Appellant testified that one detective forced him to participate in buy-bust operations,[5] which were not part of his obligations under the plea agreement. Appellant further testified that the same detective refused to cooperate with or help appellant regard-

---

5. "A 'buy bust' operation refers to an undercover narcotics operation designed to catch suspected drug dealers by feigning a drug purchase." *United States v. Solorio,* 669 F.3d 943, 945 (9th Cir.2012).

ing one of his selected targets. Appellant also explained that, during the time he was assigned to another detective, he made a controlled purchase of narcotics, but the target was not apprehended because, by the time detectives tracked him down, the target had been murdered. Appellant was still given credit for this arrest.

However, as he stated in his testimony, appellant's success ran out at this point. Starting in late November, appellant moved on to the third target. According to appellant:

> [W]e moved on the target to make the buy. That was when I used my own money ... to make a buy. ... I was told to have my target at a particular place at 6:15. I had my target there. He was there. He left. And [N.E.D. detectives] told me that he left and to call him. So I called him back and he came back. By the time the officers was able to get over there where he was and set up, he had left again.

Appellant testified that it took detectives 45 minutes to arrive at the location of the buy. Because the detectives arrived late and missed the target, appellant stated, they never made the buy. In the days following, appellant continued to pursue this target without success.

Appellant and the detective then "tried to move to another target." Appellant found a new target but he "couldn't get nothing from the cops." Appellant sent a text message to the detective to give him information about this new target but the police officer did not respond. According to his testimony, appellant first discovered that the detectives in the Narcotics Enforcement Division would no longer be working with him when the officer sent him a text message asking him if he had spoken to his attorney because the N.E.D. detectives "no longer were on the case."

Appellant testified that, even though the detectives were no longer interested in working with him, he was still willing and able to perform his obligations under the plea agreement. However, appellant argued, the Narcotics Enforcement Division rendered his satisfaction of the agreement difficult, if not

impossible, by frequently transferring him between different detectives and assigning him to detectives who either did not have sufficient time to work with him or did not cooperate with him. Appellant explained that the detectives' lack of availability hindered his ability to satisfy the agreement because appellant and the detectives needed to spend time together to plan and evaluate different strategies of identifying and arresting targets. Appellant testified that, despite this need to spend time together, "[t]hey was a little busy. They was tied up and [one of the detectives] will tell me, you know—each week will go by she will say we can't work that target, I'm busy on working another assignment.... So it wasn't like we weren't doing nothing. The time elapsed, however, they were busy, too, though." Appellant also testified that the State was not cooperating with his efforts because, under the agreement, he was required to produce three "Kilo dealers" of cocaine. However, the 2009 market rate for a kilo of cocaine was $36,000, and the Narcotics Enforcement Division detectives offered no more than $250 for the buy-bust operations, which could only purchase "approximately seven grams" of cocaine.

ASA Brown testified that she gave appellant credit for the first arrest and the murdered suspect as fulfilling two thirds of his obligation under the agreement.[6] However, according to Brown, she warned appellant and his counsel in early December that appellant needed "to make one more arrest by December 11th of 2009" because, as of December 10, 2009, "the [d]etectives were tired of trying to work with" appellant because "he has been dragging his feet and not returning phone calls." Brown added, "[i]t became unproductive. They have other cases." Brown explained that, when appellant failed to provide information leading to a third arrest by December 11, 2009, after having seven months to complete the agreement, she again informed him that the detectives no

---

6. Some of ASA Brown's testimony was hearsay; appellant did not object to her testimony on those grounds and does not assert that the circuit court erred in admitting it.

longer wanted to work with him "because of his abandoned efforts over this period of time since May . . ., 2009." Brown stated that she "thought it was understandable that [the detectives] did not want to continue working with [appellant] due to the circumstances."

At the close of the hearing, the court issued factual findings and legal conclusions from the bench. Specifically, the court determined that: the written plea agreement finalized on May 12, 2009 was controlling; under the agreement, if appellant satisfied his obligations, the State would dismiss charges against his wife [7] and would recommend a sentence for appellant of eighteen months and one day; if appellant did not satisfy his obligations, the State would recommend a sentence within the guidelines; appellant only completed two of the three arrests required under the agreement; and, therefore, appellant did not satisfy the plea agreement.

 The court then denied appellant's requests for relief, concluding that they were not appropriate because "[i]n order to benefit from the contract, you have to do everything the contract says if you want the full benefit. Very clear, very clear from all of the evidence, that for one reason or another, that didn't happen." The court further stated that specific performance was not appropriate because the circuit court did not have the constitutional authority "to order the State to continue to have their agents work with the Defendant" and because to "order, specific performance, I have to find that the contract had been completed, and it hasn't been." [8] The court

---

7. The written agreement does not refer to appellant's spouse but neither party asserts that the circuit court was incorrect in finding that the State had agreed not to pursue charges against her if appellant fulfilled the terms of the agreement.

8. During Ms. Brown's testimony, appellant's counsel entered three exhibits into evidence that, according to the transcript, appear to be correspondence between appellant's counsel and the State regarding the willingness of appellant and the detectives to work together to complete the plea agreement. Specifically, appellant's counsel sent two letters to the State dated December 21, 2009 and December 22, 2009, respectively. The State responded to the December 22, 2009 letter in a

also denied appellant's request for *quantum meruit* relief after concluding that appellant had actually received a benefit from the plea agreement in that "he continued to be free in the community for seven months," "the State had agreed not to file the mandatory ten [years]," and the State did not ultimately present appellant's wife with criminal charges. Having denied appellant's motion to enforce the plea agreement, the circuit court then stated that it was going to address the issue of sentencing. Appellant's counsel noted an interlocutory appeal from the court's ruling. The court subsequently revoked appellant's bail.[9]

## ANALYSIS

We first note that the circuit court's order denying appellant's motion to enforce the plea agreement is appealable

---

letter dated December 28, 2009. We consider these letters to be possibly significant as bearing on the issue of appellant's performance. These letters were returned to the parties at the close of the hearing and were not included in the record transmitted to this Court. This Court attempted to supplement the record with these exhibits by contacting the circuit court's clerks office, as well as counsel for the State and for appellant. On April 18, 2012, this Court received the letter dated December 22, 2009, the content of which does not affect the result in this appeal. This Court has not received the other two missing letters.

9. In his brief, appellant sets forth an argument titled "The Revocation of Bail." The entirety of his argument in this section is as follows: "The words of the Circuit Court seem to indicate that the hearing upon the motion for enforcement was but a mere formality, the Circuit Court having decided it beforehand." We do not agree with his logic and, in any event, it is not clear whether appellant is contesting the revocation of bail or alleging a lack of due process in the hearing on the motion to enforce the plea agreement. We will not consider the argument (if it is one) further. " '[I]f a point germane to the appeal is not adequately raised in a party's brief, the court may, and ordinarily should, decline to address it.' " *Abbott v. State*, 190 Md.App. 595, 631 n. 14, 989 A.2d 795 (2010) (quoting *Health Serv. Cost Rev. v. Lutheran Hosp.*, 298 Md. 651, 664, 472 A.2d 55 (1984)).

After filing his brief, appellant filed two petitions with this Court for bail pending appeal, the first of which was denied by order of this Court on December 1, 2010, and the second of which we will deny here. The proper forum for a motion for bail is the circuit court. There is no authority for this Court to modify the circuit court's revocation of bail. *Long v. State*, 16 Md.App. 371, 372–374, 297 A.2d 299 (1972).

under the collateral order doctrine. *See Rios v. State,* 186 Md.App. 354, 364–66, 974 A.2d 366 (2009) ("The enforceability of alleged plea agreements is a proper basis for interlocutory appeals because of the strong public policy that favors the plea negotiation process.").

We now turn to appellant's argument that the circuit court erred in denying his motion to enforce his plea agreement. In his brief, appellant sets forth thirteen separate arguments in support of his contention. In addition, the State raises a threshold argument as to whether this Court can entertain any of appellant's contentions based on the record properly before us. We will address these issues in the following order: (1) whether the record properly before us indicates that the parties entered into a plea agreement; (2) if so, what are the terms and obligations to which the parties bound themselves, and (3) whether the parties performed their obligations under the controlling agreement and, if not, what remedies are available to appellant As we will explain, we hold that the record is sufficient for us to identify the terms of the plea agreement; that the May 12th written plea agreement is legally binding on the parties; and, because appellant failed to satisfy his obligations under this agreement within a reasonable time, he has no right to the benefit of his bargain, either in whole or in part.

## I. A Binding Plea Agreement

■ We first address the State's threshold argument. The State contends that, pursuant to Maryland Rule 4–243(d),[10] all

---

**10.** Md. Rule 4–243 provides:
 **Plea Agreements.**

 \* \* \*

 (d) Record of proceedings. All proceedings pursuant to this Rule, including the defendant's pleading, advice by the court, and inquiry into the voluntariness of the plea or a plea agreement shall be on the record. If the parties stipulate to the court that disclosure of the plea agreement or any of its terms would cause a substantial risk to any person of physical harm, intimidation, bribery, economic reprisal, or unnecessary annoyance or embarrassment, the court may order that the record be sealed subject to terms it deems appropriate.

plea agreements "shall be on the record," even if the "disclosure of the plea agreement or any of its terms would cause a substantial risk to any person of physical harm," because, in that case, "the court may order that the record be sealed subject to terms it deems appropriate." The State cites *Cuffley v. State,* 416 Md. 568, 582, 7 A.3d 557 (2010) and *Matthews v. State,* 424 Md. 503, 36 A.3d 499 (2012), for the proposition that Rule 4–243(d) requires strict compliance and that any questions arising from a "binding plea agreement must be resolved by resort *solely* to the record established at the Rule 4–243 plea proceeding." *Cuffley,* 416 Md. at 582, 7 A.3d 557 (emphasis in *Cuffley* ).

Therefore, the State argues, in this case, the record "begins (and ends) with [appellant]'s entry of his guilty plea." The State contends that, because the transcript of that hearing does not contain any references to a plea agreement, "an assessment of the court record, specifically, the transcript of the hearing ... inevitably leads to the conclusion that [appellant] entered a straight-up unconditional guilty plea on that date to possession of cocaine with intent to distribute. There is nothing in the transcript ... that demonstrates otherwise, ..." Therefore, the State concludes, whatever agreement the parties were alleged to have reached on or before the date appellant entered his guilty plea cannot be grafted upon that plea.

The State next turns its attention to the letter, signed by the parties, on May 12th. The State explains that, because the court had already accepted appellant's unconditional guilty plea, there was no consideration for the agreement signed on May 12th. As a result, the May 12th agreement was a legal nullity. The State maintains that another basis for finding the May 12th letter invalid is the fact that the letter did not require the State to expressly bind itself to any promises in exchange for appellant's services, nor did it provide a remedy for appellant or the State in the event that either party failed to perform under the agreement. Therefore, the State argues, the May 12th agreement is null and void in its own right and cannot save the parties' original failure to reach a valid

agreement before appellant entered his guilty plea. The State requests that we hold that the circuit court did not err in denying appellant's motion to enforce what was ultimately a non-binding and/or non-enforceable plea agreement and that we remand this case for sentencing.

■ These arguments are unpersuasive. First, and most fundamentally, the State's contentions are completely at variance with its position before the circuit court. While the State now argues that there is no valid, binding agreement between the parties, the State consistently represented that such an agreement existed to the circuit court. For example, during a hearing before the circuit court, the State stated that "[t]here was a plea agreement . . . in front of [the judge who accepted the guilty plea]. The State is not contesting that." The State further explained that:

> what is not in the transcript is the actual plea agreement that was before [that] Judge . . . where [he] had [bound] himself when we had approached the bench. Before the factual litany of the plea was taken, we approached to see if he could bind himself because of the nature of the plea, and I believe it may have been off the record, and then [the] Judge . . . [bound] himself with the agreement that he is to complete the terms and conditions that both parties agree to from the proffer session by the [initially scheduled] sentencing date. . . . If for some reason he is making progress; needs to be extended, [the] Judge . . . would do so at that time.

During that same hearing, the State confirmed that the May 12th agreement was "the entire contract, the entire agreement as enumerated, discussed, contemplated by [ASA Brown] and [appellant's counsel]." We will not allow the State to advance directly contradictory positions in the circuit court and this Court. *See Eagan v. Calhoun,* 347 Md. 72, 88, 698 A.2d 1097 (1997) (" 'Generally speaking, a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was

chargeable with, full knowledge of the facts, and another will be prejudiced by his action.'") (quoting 28 Am.Jur.2d *Estoppel and Waiver* § 68, at 694–95 (1966)); *Gordon v. Posner,* 142 Md.App. 399, 424–27, 790 A.2d 675 (2002).

█ Second, the State's interpretation of Rule 4–243(d) is too narrow. That rule "evidences a purpose of ensuring meaningful appellate review of the proceedings and, in particular, of the enforceability of a plea agreement." *Poole v. State,* 77 Md.App. 105, 120 n. 7, 549 A.2d 417 (1988). In this case, meaningful appellate review can take place because the record is clear as to what the parties agreed—the parties signed a written agreement setting out their understanding. Therefore, while the parties did not place the terms of their agreement on the record in the guilty plea proceeding, as required under Md. Rule 4–243(d), the uncontradicted testimony of the parties, along with the written plea agreement of May 12th, provides a sufficient record for meaningful appellate review.

Finally, the State's reliance on *Cuffley v. State,* 416 Md. 568, 7 A.3d 557 (2010) and *Matthews v. State,* 424 Md. 503, 36 A.3d 499 (2012), is misplaced. The State suggests that these cases support its contention that there is no valid plea agreement because no agreement was set forth on the record of the plea hearing. The State seeks to extend the holdings of the cases beyond their facts. In *Cuffley* and *Matthews,* the issue was whether a defendant, filing a Rule 4–345(a)[11] motion to correct a sentence, could challenge a sentence imposed by the court on the basis that the sentence was illegal because it was not within the terms of the plea agreement.[12] *Cuffley,* 416 Md. at 573–75, 7 A.3d 557; *Matthews,* 424 Md. at 507–08, 36 A.3d 499. The issue in those cases was not, as it is here, whether the State had violated a plea agreement *prior* to the imposition of

---

**11.** Rule 4–345 reads in pertinent part:

**Sentencing—Revisory power of court.**
(a) Illegal sentence. The court may correct an illegal sentence at any time.

**12.** The courts held that they could. *Cuffley,* 416 Md. at 575 n. 5, 7 A.3d 557; *Matthews,* 424 Md. at 506, 36 A.3d 499.

a sentence. Therefore, because this case involved an interlocutory appeal filed *before* the court had the opportunity to impose a sentence, neither *Cuffley* nor *Matthews* supports the State's argument.

We therefore reject the State's argument that there is no valid or binding plea agreement between the parties.

## II. The Controlling Terms of the Plea Agreement

■ We now turn to the issue of determining the terms and obligations to which the parties bound themselves. Appellant contends that the terms of the oral plea agreement, and not the written agreement of May 12th, control the rights and liabilities of the parties. Appellant asserts that, while he orally agreed to act as a confidential informant, he did not agree to provide information leading to the arrest of three drug dealers until May 12th. In addressing this argument, the circuit court determined that the plea agreement was finalized when it was signed on May 12, 2009 and that, therefore, the terms of that writing controlled. Specifically, the circuit court stated, "[i]t's clear to me that the plea was entered into on [the date of the guilty plea] and finalized on May the 12th by the signed memorandum. . . ." We agree with the circuit court; our conclusion is based on the relationship between the two agreements.

■ As this Court explained in *Rios,* we construe and, when necessary, enforce plea agreements based upon considerations of " 'fair play and equity under the facts and circumstances of the case. . . .' " 186 Md.App. at 366–367, 974 A.2d 366 (quoting *State v. Brockman,* 277 Md. 687, 697, 357 A.2d 376 (1976)). This analysis requires us to consider, but not necessarily be fully bound by, precepts of the common law of contracts. *Id.*

■ In the case before us, there is no conflict between fairness to the parties and a well-established principle of contract law. There can be two types of enforceable preliminary agreements: first, "when the parties have reached complete agreement (including the agreement to be bound) on all

the issues perceived to require negotiation .... [but] the parties desire a more elaborate formalization." *Teachers Ins. and Annuity Ass'n v. Tribune Co.,* 670 F.Supp. 491, 498 (S.D.N.Y.1987); the second is "one that expresses mutual commitment to a contract on agreed major terms, while recognizing the existence of open terms that remain to be negotiated." *Id.; see also Cochran v. Norkunas,* 398 Md. 1, 12 n. 5, 919 A.2d 700 (2007) (citing *Teachers Ins. and Annuity* with approval). We view the May 8th agreement as falling into the second category because the parties clearly intended to be bound, but they had not yet documented the agreement, nor articulated precisely of what appellant's services were to consist. The parties reached an agreement as to that issue on May 12th. The parties understood that the agreement written on May 12th was a finalized version of the earlier oral agreement, and that they would therefore be bound by the terms of the May 12th agreement. We are further persuaded of the controlling nature of the May 12th written agreement by the fact that neither appellant nor his counsel objected to signing it, and by the evidence—throughout the record—that both the parties relied on, and referred to, the May 12th agreement as the controlling agreement. The circuit court's conclusion was correct.

### III. Performance and Remedies

We now address the main issue in this appeal, namely, whether the State complied with the plea agreement and, if not, whether appellant is entitled to relief. As we understand appellant's brief, he presents three alternative arguments. First, appellant asserts that he satisfied the obligations under the oral plea agreement and should therefore receive the full benefits under that agreement (a sentence of ten years, all but 18 months and one day suspended). Second, appellant contends that the detectives in the Narcotics Enforcement Division rendered his satisfaction of the agreement impossible by refusing to cooperate with him or dedicate sufficient time and resources to helping him identify and arrest targets. Therefore, appellant argues, we should conclude that he either

satisfied or substantially satisfied the requirements of the May 12th agreement and, under the doctrine of *quantum meruit*, he should receive a benefit (in the form of a reduction in sentence) proportional to his satisfaction of the agreement. Appellant's third argument is similar to the second in that he maintains that, if he did not satisfy the plea agreement, it is only because the Narcotics Enforcement Division rendered his performance impossible. Appellant argues that, because he is still ready, willing, and able to satisfy the written agreement, he should be permitted to do so, and this Court should enter an order of specific performance compelling the State to cooperate with him in his efforts to provide information leading to the arrest of a third individual. We disagree with appellant and, for reasons which we will explain below, we will affirm the judgment of the circuit court.

In considering appellant's contentions, we are bound by the circuit court's findings of fact unless we conclude they are clearly erroneous. Maryland Rule 8–131(c). However, we consider *de novo* the legal issue of whether the plea agreement has been violated. *Tweedy v. State*, 380 Md. 475, 482, 845 A.2d 1215 (2004).

As we have explained, considerations of fairness, as opposed to the rigid application of the rules of the law of contracts, must guide us in deciding whether appellant is entitled to the relief he seeks. However, considerations of fair play and equity do not obviate the requirement that appellant, as the " 'party alleging the breach[,] has the burden of proof on all of [his] breach of contract claims.' " *Weichert Co. of Md. v. Faust*, 419 Md. 306, 339 n. 10, 19 A.3d 393 (2011) (quoting Richard A. Lord, 23 WILLISTON ON CONTRACTS, § 63:13 (4th Ed. 2002)). Part of the moving party's burden is to persuade the circuit court that he has satisfied his own obligations under the contract such that the court should enforce the contract against the other party. *See Michael v. Towers*, 253 Md. 114, 119, 251 A.2d 878 (1969). When the moving party has not satisfied his own obligations under the contract, and instead presents an affirmative basis to justify this failure, the moving

party must still satisfy his burden of proof and persuasion. *Wells Fargo Home Mortg., Inc. v. Neal,* 398 Md. 705, 730 n. 12, 922 A.2d 538 (2007).

We may dispose of appellant's first argument—that he fully satisfied the oral agreement—without delay because, as set forth above, the May 12th agreement is controlling. Therefore, whether appellant satisfied the earlier iteration of the parties' agreement is not relevant to the resolution of this appeal.

We next turn to appellant's argument that, even though he only performed two thirds of his obligations under the agreement, he is entitled to claim that he substantially performed under the agreement, and therefore have access to the remedy of *quantum meruit,* because his inability to perform his final obligation was due to the refusal of the detectives in the Narcotics Enforcement Division to cooperate with him or assist him in identifying and arresting targets.

The trial court determined that appellant's efforts to perform his obligations under the plea agreement were unsatisfactory, noting that "the Police weren't happy with his responses; so, there came a time when they said they are not going to try to continue to work with him anymore on it, with him." The May 12 letter did not provide a time frame for appellant's performance. While the terms of the written plea agreement did not set forth a deadline or time frame in which appellant was expected to have provided information resulting in three arrests, "[i]n the absence of an express time for performance, a reasonable time will be implied." *Anne Arundel County v. Crofton Corporation,* 286 Md. 666, 673, 410 A.2d 228 (1980); *see also Kiley v. First National Bank,* 102 Md. App. 317, 335, 649 A.2d 1145 (1994) ("promises ordinarily are not interpreted to require perpetual performance.") (citations omitted). Implicit in the circuit court's analysis is its conclusion that appellant had been provided a reasonable period of time in which to satisfy the agreement. Appellant had seven months, from mid-May until mid-December (when the detectives ceased working with him), to assist in the arrest of three

targets. We emphasize that considerations of fair play and equity, as opposed to the strict application of the principles of contract law guide our analysis in plea agreement cases, *Rios,* 186 Md.App. at 366–367, 974 A.2d 366, but we perceive nothing unfair or inequitable about the court's conclusion that seven months was a reasonable time for performance.

Similarly, the court was not persuaded by appellant's contention that the only reason he failed to satisfy the plea agreement within this time was because the detectives in the Narcotics Enforcement Division rendered his satisfaction of the agreement impossible. The trial court further concluded that *quantum meruit* was not an appropriate remedy for this case. The circuit court did not err in either determination.

■■ We first address the court's conclusion that appellant had failed to substantially satisfy the agreement—despite having been provided a reasonable time frame in which to do so—and that this failure was his own responsibility, and not that of the detectives. The circuit court was presented with two conflicting versions of the relevant events. The court concluded that ASA Brown's evidence was more credible. We will not set the court's credibility-based determination aside. *See* Rule 8–131(c).

■■■ We now turn to appellant's contention that he is entitled to relief based upon the theory of *quantum meruit.* He states:

> Two thirds of the obligation of the plea agreement should be rewarded with two thirds of the benefit of the bargain. Two thirds of the 3.5 year difference between 18 months [appellant's maximum sentence if he performed his obligations under the plea agreement] and 5 years [the minimum sentence under the Sentencing Guidelines] would be 28 months. Subtracting 28 months from 5 years leaves a balance of 32 months. [Appellant] is thus entitled ... to a sentence of 32 months."

Appellant's argument fails for two reasons. First, the court correctly concluded that, because appellant did not substan-

tially perform the agreement, he could not enforce the contract against the other party unless the contract, by its explicit terms or structure, indicated otherwise. *See* RESTATEMENT (SECOND) OF CONTRACTS § 237 (1981) ("It is a condition of each party's remaining duties to render performances [under a contract] that there be no uncured material failure by the other party to render any such performance due at an earlier time."). Here, no such terms were included in the plea agreement. Therefore, to hold that appellant could enforce the agreement the State, and receive a partial reduction in his sentence, would be to add terms to the plea agreement that are not there.

Second, appellant's argument is based on a misunderstanding of the remedy of restitution, of which *quantum meruit* is an aspect. Explaining why requires us to consider the nature of restitutionary relief. The underlying purpose of an action for restitution is to " 'prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction.' " *Alternatives Unlimited v. School Comm'rs,* 155 Md.App. 415, 455, 843 A.2d 252 (2004) (quoting Dan B. Dobbs, 1 LAW OF REMEDIES § 4.1, at 557 (2d ed. 1993) (hereafter "Dobbs")).

One application of the legal remedy of restitution has traditionally been termed *quantum meruit.* The two situations in which this term is most commonly encountered involve contracts implied by fact [13] or contracts implied by law, also called quasi-contracts.[14] The plea agreement between

---

13. "An implied by fact contract is inferred from conduct of parties and arises where plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor, and defendant, knowing such circumstances, avails himself of benefit of those services." *Caroline County v. Dashiell,* 358 Md. 83, 95 n. 6, 747 A.2d 600 (2000) (internal quotation marks and citations omitted). An implied by fact contract is a contract, albeit one established by the parties' actions, as opposed to their express agreement. *Alternatives Unlimited,* 155 Md.App. at 478, 843 A.2d 252.

14. A quasi-contract " '*is indeed no contract at all,* it is simply a rule of law that requires restitution to the plaintiff of something that came into

appellant and the State is an express contract. Appellant does not seek compensation for, or the return of, anything either in the State's possession that is properly his, or paid by him to the State's benefit, which are the core forms of relief in any action based on a quasi-contract theory. *Alternatives Unlimited,* 155 Md.App. at 485, 843 A.2d 252 (citing *Mogavero v. Silverstein,* 142 Md.App. 259, 276, 790 A.2d 43 (2002) and *Mass Transit v. Granite,* 57 Md.App. 766, 775, 471 A.2d 1121 (1984)). Therefore, these two applications of *quantum meruit* do not concern us.

 In cases where an express contract exists, *quantum meruit* may provide a remedy for a non-breaching party when its full performance is rendered impossible by the breaching party. *Mogavero,* 142 Md.App. at 278, 790 A.2d 43 (citing *Petropoulos v. Lubienski,* 220 Md. 293, 303, 152 A.2d 801 (1959)). In this scenario, the non-breaching party can recover the reasonable value of services actually rendered under the contract. *Mogavero,* 142 Md.App. at 279–80, 790 A.2d 43. In contrast, the measure of recovery in a quasi-contract action is the value of the defendant's gain, if any, from plaintiff's actions. *Id.* at 281, 790 A.2d 43. These are actions at law, and monetary damages are the exclusive forms of relief. *Alternatives Unlimited,* 155 Md.App. at 462, 843 A.2d 252 (citing Dobbs at 557). Finally, a party can seek restitution through equitable remedies such as a constructive trust, an equitable lien, an accounting for profits, etc. *Id.* What is important for our analysis is that all restitutionary actions have, as an end result, the adjustment of the economic status of the parties by payment of damages, retitling of assets, or some combination of the two.

---

defendant's hands but belongs to the plaintiff in some sense.'" *Alternatives Unlimited,* 155 Md.App. at 480, 843 A.2d 252 (quoting *Mass Transit v. Granite,* 57 Md.App. 766, 775, 471 A.2d 1121 (1984) (emphasis added by *Alternatives Unlimited* )); *see also Dashiell,* 358 Md. at 95, 747 A.2d 600 (A contract implied by law is " 'not based on the apparent intention of the parties … [but rather] are obligations created by law for reasons of justice.'") (quoting Restatement (Second) of Contracts § 4 (1981)).

None of these theories of relief are relevant to the case before us. As we have explained, every restitutionary remedy, whether legal or equitable, is designed to rectify *unjust* enrichment. There is no unjust enrichment in this case, because nothing unjust or unfair occurred when the law enforcement agencies in Prince George's County used the information provided to them by appellant pursuant to the plea agreement. The narcotics detectives to whom the information was given had every right to act on it and appellant provided the information to them for that purpose. That appellant was later unable or unwilling to complete performance does not change the result. *See Dashiell,* 358 Md. at 100, 747 A.2d 600 ("Even if the County was enriched, such enrichment was not unjust because it was in strict compliance with the terms of [the] contract.").

Although he termed his theory of relief *"quantum meruit,"* appellant was not seeking restitution, nor anything like it. Instead, he asked the circuit court to require the State, and the court itself, to reduce the maximum sentence to which he is exposed pro rata to the degree of his incomplete performance of the agreement. But the State never agreed to such an arrangement, nor was such an agreement presented to the court prior to the entry of the guilty plea. Again, our standard in deciding whether to enforce the plea agreement is fairness and equity under the facts of the case. *Rios,* 186 Md.App. at 366–367, 974 A.2d 366. There was nothing unfair or inequitable in the court's refusal to rewrite the terms of the plea agreement in the manner requested by appellant As with other parts of our analysis, we perceive no conflict between considerations of fair play and equity and the results derived from the application of principles of contract and restitution to the facts of this case.

Finally, we examine appellant's argument that, because the detectives of the Narcotics Enforcement Division rendered his satisfaction of the agreement impossible, he is entitled to an order of specific performance compelling the detectives to cooperate with him in his efforts to provide information leading to the arrest of a third individual. The circuit court

declined to do so for two reasons: first, that it lacked the authority, under the doctrine of separation of powers, to order police officers to cooperate with appellant in law enforcement activities; and, second, because to "order specific performance, I have to find that the contract had been completed, and it hasn't been."

As we have previously explained, because appellant failed to perform the contract within a reasonable time period, and the circuit court was not persuaded by appellant's evidence that the detectives made his performance impossible, he is not entitled to the remedy of specific performance. *See* RESTATEMENT (SECOND) OF CONTRACTS § 237.[15]

In conclusion, the parties' written agreement, which elaborated upon their earlier verbal understanding, is the binding agreement between them. The circuit court did not err in deciding that seven months was a reasonable time for appellant to perform his obligations. The court made credibility-based findings as to appellant's performance and these findings were not clearly erroneous. The court did not err in applying the law to the facts as it found them and concluding that appellant failed to perform the agreement. *Quantum meruit,* and other forms of restitutionary relief, are inapplicable for a variety of reasons. Because appellant, not the State, breached the agreement, appellant is not entitled to specific performance.

**THE ORDER OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY DENYING APPELLANT'S MOTION TO ENFORCE PLEA AGREEMENT IS AFFIRMED. THIS CASE IS REMANDED FOR SENTENCING.**

**APPELLANT TO PAY COSTS.**

Concurring Opinion by EYLER, DEBORAH S., J.

---

**15.** We decline to address the constitutional basis for the circuit court's decision because we can resolve the issue on a non-constitutional ground. *See, e.g., Robinson v. State,* 404 Md. 208, 216–217, 946 A.2d 456 (2008) ("[I]t is this Court's established policy to decide a constitutional issue only when necessary.").

**750**

Concurring Opinion by EYLER, DEBORAH S., J.

Although I agree with the reasoning of the majority and the outcome of the appeal, I respectfully concur because I disagree with the decision to use a pseudonym to conceal the defendant/appellant's identity in this opinion. This is the first and only published opinion of this Court or the Court of Appeals in a non-investigatory criminal case in which a pseudonym has been substituted for the name of the defendant/appellant. Discretion to use a pseudonym only should be exercised rarely, and this case does not warrant doing so.[1]

---

1. Rule 1–301, which applies generally to all court proceedings in Maryland and is entitled "Form of court papers," provides, as relevant: (a) Caption and titling. Every pleading and paper filed shall contain a caption setting forth (1) the parties or, where appropriate, the matter, (2) the name of the court, (3) the assigned docket reference, and (4) a brief descriptive title of the pleading or paper which indicates its nature. An opinion of an appellate court is a "paper" that is filed in the case.

Rule 4–202, entitled "Charging Document–Content" states at subsection (a) that the charging document shall contain the name of the defendant.

In the appellate courts, there are several types of cases in which confidentiality is required in opinions, published or not, in certain appeals. Rule 8–121, entitled "Appeals from courts exercising juvenile jurisdiction-Confidentiality," states that, in an appeal from an order entered by a juvenile court that concerns a child, "Unless the court orders otherwise, the proceedings shall be styled 'In re ... (first name and initial of last name of the child).' " Md. Rule 8–121(b). Subsection (c) of that rule goes on to provide that "the last name of the child shall not be used in any opinion, oral argument, brief, record extract, petition, or other document pertaining to the appeal that is generally available to the public." Subsection (d) of that rule provides that the record shall be transmitted in a way to ensure the "secrecy of its contents" and subsection (e) states that, "[e]xcept by order of the Court, the record shall be open to inspection only by the Court, authorized personnel, parties, and their attorneys."

Rule 8–122, which pertains to appeals from proceedings for adoption or guardianship, likewise requires that the proceeding be styled so as to use only the first name and last initial of the child, see subsection (b), and further states, at subsection (c), that "the last name of the child, the natural parents of the child, and the adopting parents of the child shall not be used in any opinion, oral argument, brief, record extract, petition, or other document pertaining to the appeal that is generally available to the public." It further provides that the parties may waive the requirements of the section, with the approval of the Court. It also contains provisions ensuring secrecy of the contents of the record upon

After the police executed a search warrant for the appellant's house and recovered 8.88 grams of crack cocaine, $4,000 in U.S. currency, and drug packaging items, he was charged with possession of cocaine with intent to distribute and with simple possession. Before then, he never acted as an informant or in cooperation with the State. In an effort to help himself in this case, the appellant entered into the plea agreement that is the subject of this appeal. The agreement gave him two immediate benefits, which he retains: the State forfeited its right to seek a mandatory 10–year sentence and further forfeited its right to bring charges against his wife.

The appellant would have received a third benefit—a greatly reduced sentence, *i.e.*, 18 months with all but one day suspended—if he had performed as promised by signing up as a confidential informant, identifying three kilo-level cocaine dealers, and engaging in controlled buys with each one that produced an arrest from which the prosecutor's office could pursue felony convictions. The appellant only partially performed (if that), but was given a significant benefit of the doubt by the State. He participated in a controlled buy of PCP from a seller who was arrested for that sale. Apparently, the seller was found to have been in possession of cocaine. Although there is no evidence that the seller was indicted for cocaine dealing or possession, the appellant was given credit for that arrest. The appellant also participated in a controlled buy of PCP from another seller who then was murdered; he was given credit for that transaction as well, although felony

---

transmission and limiting the people who may have access to the record for inspection.

Finally, Rule 8–123, which governs appeals from criminal investigations, provides at subsection (b) that in an appeal from an order entered in a criminal investigation the caption shall be styled "In Re Criminal Investigation No ... in the Circuit Court for ..." and at subsection (c) that "[t]he name of the person under investigation shall not be used in any opinion, oral argument, brief, record extract, petition, or other document pertaining to the appeal that is generally available to the public." Like the previous two sections, this section requires protection of the secrecy of the record in transmission on appeal and limitation of those who may have access to the record.

charges obviously could not be brought. The appellant did not identify a third person or participate in a third transaction.[2]

After the plea was accepted by the court, sentencing was delayed repeatedly so the appellant could perform his end of the plea agreement. When it was clear to the appellant that the State was taking the position that he had not complied with the plea agreement, and a firm sentencing date was scheduled, the appellant filed a motion to enforce the plea agreement. A two-day evidentiary hearing was held, during which testimony was taken from the appellant and the prosecutor. A May 12, 2009 letter setting forth the terms of the plea agreement was introduced and the witnesses testified about what had been done, and had not been done, to perform under the plea agreement.

During the proceedings below, the appellant did not ask the court to seal the transcripts of any of the proceedings or to use a pseudonym instead of his real name.

In this Court, the appellant filed a brief using his real name. Thereafter, he filed two petitions for bail pending appeal, both denied, and a "Motion for Appropriate Relief." In all three, he proceeded upon the clearly stated expectation that he would prevail in this appeal.[3] The appellant's "Motion for Appropriate Relief" reads as follows:

COMES NOW the appellant, by and through counsel, and moves for appropriate relief, pending appeal, and for his reasons, states as follows:

1. This appeal is from the denial of a motion for enforcement of a plea agreement, which involved Appellant's

---

**2.** The appellant testified that he identified a third target but attempts to carry out a controlled buy were thwarted by the police. The court did not credit that testimony, however.

**3.** For example, in his second petition for bail, the appellant observed that his first petition had been denied, "which seemed to indicate the issuance of an opinion could be expected soon" and that "[t]he passage of time, *sans* opinion, has prompted Appellant to remind this Honorable Court *that Appellant appears likely to triumph in this appeal . . . ."* (Emphasis added.)

cooperation with police in the apprehension of other defendants and potential defendants;

2. Among the appropriate avenues of relief would be the sealing of the file of this Honorable Court, not reporting the decision of this Honorable Court, and referring to the appellant by his initials, only, [sic] *appears likely to triumph in this appeal,* as explained in Appellant's brief; WHEREFORE, your Appellant prays that this Honorable Court issue an order adopting any or all of the appropriate relief mentioned above.

(Emphasis added.) The State did not file a response to either of the petitions for bail pending appeal or to the "Motion for Appropriate Relief."

In this opinion, the majority has granted in part the appellant's "Motion for Appropriate Relief" implicitly, by referring to him by a pseudonym ("Y.Y."). (As the quoted motion reveals, the appellant actually asked for his own initials to be used in any published opinion of this Court. His own initials are not Y.Y.)

As I have noted, there are no Maryland non-investigatory criminal cases in which a pseudonym has been used instead of the defendant/appellant's name. In four published opinions the Maryland appellate Courts have addressed plea agreements in which the defendants acted as informants, always using their true names. *See State v. Brockman,* 277 Md. 687, 357 A.2d 376 (1976) (holding that Brockman was entitled to the benefit of a plea bargain in which he had agreed to identify other people with whom he was involved in a murder for hire); *State v. Poole,* 321 Md. 482, 583 A.2d 265 (1991) (holding that the trial court was bound by a plea agreement it had accepted under which Poole provided the police information relevant to the prosecution of certain criminals and a police officer); *State v. Thompson,* 48 Md.App. 219, 426 A.2d 14 (1981) (holding that, after Thompson performed under a plea agreement by giving the prosecutor information about drug cases the police were interested in, and the State performed under the plea agreement by placing the case against

Poole on the stet docket, the case could not be removed from
the stet docket); and *Courtney v. Harford County,* 98 Md.
App. 649, 635 A.2d 8 (1994) (holding that Courtney, a marijua-
na trafficker, and his wife were entitled to enforce a plea
agreement in which Courtney had agreed to and did cooperate
with the State by obtaining evidence about his supplier).
There is nothing in these opinions to indicate that the defen-
dant/appellants asked to be identified by pseudonyms, as the
appellant in this case has done, or that, whether a request was
made or not, this Court or the Court of Appeals considered
whether to exercise discretion to substitute a pseudonym for
the defendant/appellant's name.

Although there are no published Maryland appellate opin-
ions in criminal cases in which the defendant/appellant's name
has been concealed, on rare occasions, pseudonyms have been
used for parties in civil cases. In *Doe v. Shady Grove
Adventist Hospital,* 89 Md.App. 351, 598 A.2d 507 (1991), this
Court reversed an order by a circuit court in a civil case
denying the plaintiff's request to proceed anonymously. The
plaintiff's cause of action was based on a claimed privacy
violation. Specifically, the plaintiff sued a hospital, alleging
that certain of its employees had improperly disclosed that he
was suffering from the disease AIDS, thus breaching his right
to medical privacy and causing him to suffer damages as a
result. He wished to use a pseudonym in his civil action
because, if he did not, the injury he claimed he had suffered
already, and that he was seeking to remedy, would be exacer-
bated.

This Court pointed out that it is well established in criminal
law that the right to public access to trials and to records is
inherent in the First Amendment to the federal constitution
and in Article 40 of the Maryland Declaration of Rights; and
that "the policy reasons enunciated by the Supreme Court in
support of public access to criminal proceedings apply with
equal force to civil proceedings." 89 Md.App. at 359, 598 A.2d
507. We noted that, historically, both criminal and civil
proceedings have been presumptively open to the public, both
in terms of access to the court and to court records. *Id.* The

right of public access is not absolute, however, and "may be limited 'when an important countervailing interest is shown.'" *Id.* at 360, 598 A.2d 507 (quoting *State v. Cottman Transmission Sys., Inc.*, 75 Md.App. 647, 656, 542 A.2d 859 (1988)). "'Since the right of public access is firmly embedded in the First Amendment, 'it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.'" *Cottman, supra,* at 657, 542 A.2d 859 (quoting *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982)).

In *Doe,* this Court concluded that the plaintiff's right to privacy concerning his medical condition was a compelling countervailing governmentally protected interest that warranted a narrow infringement upon the public's right to know the details of his lawsuit by allowing him to proceed under a pseudonym.

More recently, in *King v. State Farm Mut. Auto. Ins. Co.,* 157 Md.App. 287, 850 A.2d 428 (2004), we held that the trial court had erred by allowing an insurance company to proceed anonymously as a defendant in an uninsured/underinsured motorist case. We emphasized that the usual procedure in a civil case is that the identities of the parties are a matter of public record, and that only in exceptional cases will there be a deviation from that requirement. We quoted with approval the observations of the court in *Doe v. Rostker,* 89 F.R.D. 158, 161 (N.D.Cal.1981), in which the court analyzed for "classifiable characteristics" many cases in which requests by parties to proceed anonymously had been granted:

> "[T]he most common instances are cases involving abortion, mental illness, personal safety, homosexuality, transsexuality and illegitimate or abandoned children in welfare cases. The common thread running through these cases is the presence of some social stigma or the threat of personal harm to the plaintiffs attaching to disclosure of their identities to the public record."

157 Md.App. at 296, 850 A.2d 428. Finding that no such interests were implicated, this Court concluded that the trial

court had erred and that the error was prejudicial, as the jurors' lack of knowledge of who was involved in the lawsuit limited their ability to decide the issues before them.

In civil actions implicating the type of privacy concerns discussed by the *Rostker* court, the Court of Appeals and this Court has on occasion used pseudonyms to protect the identities of both parties. *See e.g. B.N. v. K.K.*, 312 Md. 135, 538 A.2d 1175 (1988) (tort action by woman against man for infecting her with a sexually transmitted disease that he knew, at the time of sexual activity, was contagious);[4] *S.F. v. M.D.*, 132 Md.App. 99, 751 A.2d 9 (2000) (visitation dispute between former same-sex partners over young daughter suffering from psychological problems), *overruled by Janice M. v. Margaret K.*, 404 Md. 661, 948 A.2d 73 (2008) (holding that Maryland does not recognize de facto parenthood). *See also Karen v. Christopher*, 163 Md.App. 250, 878 A.2d 646 (2005) (custody dispute between parents where paternity of child of marriage was at issue).

Some federal circuit courts of appeal have addressed the question when, and under what standard, a court should conceal a defendant's identity in a criminal case. *United States v. Doe*, 655 F.2d 920 (9th Cir.1980), is frequently cited in this regard. In that case, the defendant and a friend were charged with possession with intent to distribute heroin and simple possession. During the pendency of the charges against him, the defendant cooperated with the DEA in a heroin trafficking investigation that was aborted when it became too dangerous. At trial, the defendant took the stand and testified that the heroin belonged to him, not to his friend. At sentencing, he argued that his cooperation with the DEA and his testimony taking responsibility for ownership of the heroin was part of a plea agreement that the government then reneged on. The federal district court rejected that argument. On appeal, the Ninth Circuit likewise rejected the

---

4. The *B.N. v. K.K.* case was a certified question from the federal district court for Maryland. It appears that the pseudonyms for the parties were adopted by the federal court.

argument, saying there was no evidence of a plea agreement and that the defendant apparently had cooperated with the DEA and inculpated himself in an attempt to "make the best of a bad situation." 655 F.2d at 925.

Before the Ninth Circuit issued its opinion, the defendant asked that a pseudonym be used instead of his name. The Ninth Circuit converted its opinion into a memorandum, but the Government then asked that the opinion be published, and joined in the request that the defendant's name be replaced with a pseudonym. In deciding whether to do so, the court considered other cases, none precisely on point, that implicated privacy rights of adults or the interest in protecting juveniles from public exposure. *Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961)(contraception rights); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (abortion rights); and *United States v. Doe,* 556 F.2d 391 (6th Cir.1977), *United States v. Indian Boy X,* 565 F.2d 585 (9th Cir.1977), and *Doe v. Deschamps,* 64 F.R.D. 652 (D.Mont.1974) (all involving parties who were juveniles).

The Ninth Circuit noted that the defendant/appellant had cooperated with the DEA and then had given testimony in court that was favorable to the government. It further observed that, in a related *habeas corpus* case involving the same defendant/appellant, the record had been sealed at the urging of all parties and upon a finding by the court that the defendant/appellant faced a risk of bodily harm from other inmates during the long prison term that had been imposed. The Ninth Circuit went on to state:

We recognize that the identity of the parties in any action, civil or criminal, should not be concealed except in an unusual case, where there is a need for the cloak of anonymity. Where it is necessary, however, to protect a person from harassment, injury, ridicule or personal embarrassment, courts have permitted the use of pseudonyms [referring to the cases cited above]. While these cases are factually distinguishable, we conclude that an "unusual" case is presented.... The use of pseudonyms may prevent the

dissemination of information within the prison with respect to the [defendant]/appellant's cooperation with the Government.

655 F.2d at 922 n. 1. *See also James v. Jacobson,* 6 F.3d 233, 242 (4th Cir.1993) (observing that "[f]ederal courts traditionally have recognized that in some cases the general presumption of open trials—including identification of parties and witnesses by their real names—should yield in deference to sufficiently pressing needs for party or witness anonymity."); *Doe v. Evans,* 202 F.R.D. 173, 175 (E.D.Pa.2001) (stating that federal courts in the Third Circuit have held that, "[i]n determining whether a party may proceed under a pseudonym, the public's right of access should prevail unless the party requesting pseudonymity demonstrates that her interests in privacy or security justify pseudonymity.").

By contrast, the Ninth Circuit decided against using a pseudonym in *United States v. Stoterau,* 524 F.3d 988 (9th Cir.2008). There, the defendant pleaded guilty to transporting child pornography by uploading obscene pictures of young boys onto an internet website. On appeal, he challenged several aspects of his sentence. He requested that the court use a pseudonym in its opinion, arguing that his was an "unusual case" in which anonymity was needed "because sex offenders such as [he] face an elevated risk of violent abuse in prison." *Id.* at 1012. Commenting that the claimed need for anonymity in a given case must be balanced " 'against the general presumption that parties' identities are public information,' " *id.* (quoting *Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1069 (9th Cir.2000)); the court rejected the request. It disagreed with the notion that " 'mere membership in a class of offenders that may be targeted by other inmates' " makes a case sufficiently unusual to warrant the use of a pseudonym in the court's opinion. *Id.* at 1013 (quoting *United States v. Kapitzke,* 130 F.3d 820, 822 (8th Cir.1997)). The court reasoned:

Inmates may face a heightened risk of abuse in prison for a range of reasons, (for example, membership in a gang,

membership in an ethnic group, or sexual orientation), and it is prison officials who have the primary responsibility to "take reasonable measures to guarantee the safety of the inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832–33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotation marks omitted). If the nature of Stoterau's offense alone could qualify him for the use of a pseudonym, there would be no principled basis for denying pseudonymity to any defendant convicted of a similar sex offense. Such a significant broadening of the circumstances in which we have permitted pseudonymity is contrary to our long-established policy of upholding "the public's common law right of access to judicial proceedings," *Does I thru XXIII*, 214 F.3d at 1067, and contrary to our requirement that pseudonymity be limited to the "unusual case." [*United States v.*] *Doe II* , 488 F.3d [1154,] [] 1156 n. 1 [ (2007) ].

524 F.3d at 1013. The court further reasoned that for practical considerations, and keeping in mind the importance of the public's right of access to the courts, the interest in favor of open judicial proceedings outweighed Stoterau's interest in anonymity. The court noted that Stoterau had

not shown that his need for anonymity outweighs "the public's interest in knowing the party's identity. We question the value that pseudonymity would have for Stoterau at this point. Stoterau's conviction is a matter of public record, and many of the documents in his case were not submitted under seal. Therefore, the use of a pseudonym in this disposition will have limited effect in concealing the fact that Stoterau was convicted of transporting child pornography. On the other hand, "[i]dentifying the parties to the proceeding is an important dimension of publicness. The public has a right to know who is using their courts." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir.1997). Under these circumstances, the interest "weighing in favor of open judicial proceedings"

outweighs the low value of pseudonymity at this point in Stoterau's proceedings. *Does I thru XII*, 214 F.3d at 1069. *Id.* at 1013–14.

In my view, the case at bar is not an unusual one in which a compelling interest in concealing the appellant's identity outweighs the constitutional, common law, and Maryland Rule-based right of public access to all information about this criminal matter, including the appellant's name.[5] Unlike the Ninth Circuit *Doe* case discussed above, the appellant did not assist the State by way of testimony; indeed, the conduct the State was generous enough to give him credit for under the plea agreement hardly amounted to serious cooperation. Also, unlike the *Doe* case, there was no finding by the court below or any court in a related case that the appellant faces a serious risk of personal injury in prison if his name is not concealed in this opinion. The appellant made no argument in his "Motion for Appropriate Relief" as to why, on this record, it is likely that he will be subjected to personal harm in prison. In fact, given that his motion assumed that he would not be in prison at all, it appears that the appellant does not see his personal safety situation as differing depending upon whether he is in or out of prison.

In addition, to the extent that there was some cooperation by the appellant, nothing in the record of this case gives the specifics of that cooperation. The most specific information is

---

**5.** The Maryland court rules that govern access to court records, including access to case records, declare as a general policy a "presumption of openness." Rule 16–1002 states at subsection (a):

**Presumption of openness.** Court records maintained by a court or by another judicial agency are presumed to be open to the public for inspection. Except as otherwise provided or pursuant to the Rules in this Chapter, the custodian of a court record shall permit a person, upon personal appearance in the office of the custodian during normal business hours, to inspect the record.

Under Rule 16–1001(e)(3), a "court record" includes a "case record," which ordinarily means "a document, information, or other thing that is collected, received, or maintained by a court in connection with one or many specific judicial actions or proceedings." Md. Rule 16–1001(c)(A). The name of a party to a case is "information" that is maintained by a court in connection with a case.

the identity of certain police officers—which is not specific at all, given that they routinely are involved in criminal matters. Of the two PCP sellers, one is dead and the other is not revealed in the record. The appellant did not testify against the seller who is still alive and there is nothing in the record that shows that that person would have known that his arrest was tied to the appellant or to a plea deal.

To the extent the appellant's request for anonymity in this opinion is based on a general concern that anyone who is revealed as having acted as an informant will be in danger of physical harm from members of the prison population generally (and again, the appellant has not even made such an argument), this case is more like the Ninth Circuit's *Stoterau* case than its Doe case. The Department of Public Safety and Correctional Services ("DPSCS") is charged with safeguarding prisoners who, because of their status, may be subject to attack by other inmates: child molesters, gang members, and minorities. Likewise, it is the duty of DPSCS to safeguard prisoners thought by other inmates to be "snitches."

Another very significant distinction between this case and the Ninth Circuit's *Doe* case is that the situation the appellant finds himself in—becoming a member of the prison population for more than one day—was brought upon himself by virtue of his *not* cooperating with the State as he had promised to do. The government has an interest in having people who are part of the criminal element cooperate, as obtaining convictions, especially in drug cases, otherwise can be difficult. In this case, the State's interest in that regard was not fulfilled, nor will there be future conduct by the appellant to advance that interest. The appellant did not cooperate as he had agreed to, and will go to prison only because of his failure to cooperate. The plea agreement between the appellant and the State did not contain a promise of confidentiality. To the extent that such a promise could have been inferred, however, it no longer reasonably can be inferred given that the appellant has breached the plea agreement.

In the absence of any specific evidence or even an allegation that the appellant is likely to be subjected to physical harm in prison, and given that the appellant did not abide by the terms of the plea agreement and only will become an inmate for that reason, there is not a countervailing important interest in the appellant's safety that outweighs the right of access to all information about this case, including the appellant's identity. Accordingly, this Court is without a sufficient basis to exercise its discretion to conceal the appellant's identity in the opinion in this case. Therefore, I cannot join in the opinion to the extent that the appellant's name is not revealed.